**Fill in this information to identify your case:**

Debtor 1 — David A Greer
First Name   Middle Name   Last Name

Debtor 2
(Spouse, if filing)   First Name   Middle Name   Last Name

United States Bankruptcy Court for the: District of Minnesota

Case number   20-32319
(if known)

Official Form 427

# Cover Sheet for Reaffirmation Agreement

12/15

Anyone who is a party to a reaffirmation agreement may fill out and file this form. Fill it out completely, attach it to the reaffirmation agreement, and file the documents within the time set under Bankruptcy Rule 4008.

## Part 1: Explain the Repayment Terms of the Reaffirmation Agreement

| | | |
|---|---|---|
| 1. Who is the creditor? | Minnesota Housing Finance Agency c/o AmeriNat | |
| | Name of the creditor | |

| 2. How much is the debt? | On the date that the bankruptcy case is filed | $ 14,094.56 |
|---|---|---|
| | To be paid under the reaffirmation agreement | $ 14,094.56 |
| | $ 97.94 per month for 218 months (if fixed interest rate) | |

RECEIVED
20 NOV 16 PM 1:44
U.S. BANKRUPTCY COURT
ST. PAUL, MN

| 3. What is the Annual Percentage Rate (APR) of interest? (See Bankruptcy Code § 524(k)(3)(E).) | Before the bankruptcy case was filed | 4.99 % |
|---|---|---|
| | Under the reaffirmation agreement | 4.99 % ☒ Fixed rate  ☐ Adjustable rate |

| 4. Does collateral secure the debt? | ☐ No | |
|---|---|---|
| | ☒ Yes. Describe the collateral. | 144 5th Ave Granite Falls, MN 56241 |
| | Current market value | $ 52,700.00 |

| 5. Does the creditor assert that the debt is nondischargeable? | ☒ No |
|---|---|
| | ☐ Yes. Attach an explanation of the nature of the debt and the basis for contending that the debt is nondischargeable. |

6. Using information from *Schedule I: Your Income* (Official Form 106I) and *Schedule J: Your Expenses* (Official Form 106J), fill in the amounts.

| Income and expenses reported on Schedules I and J | | Income and expenses stated on the reaffirmation agreement | |
|---|---|---|---|
| 6a. Combined monthly income from line 12 of Schedule I | $ 5424.13 | 6e. Monthly income from all sources after payroll deductions | $ 5424.13 |
| 6b. Monthly expenses from line 22c of Schedule J | $ 5758.82 | 6f. Monthly expenses | − $ 5424.13 |
| 6c. Monthly payments on all reaffirmed debts not listed on Schedule J | − $ 0 | 6g. Monthly payments on all reaffirmed debts not included in monthly expenses | − $ — |
| 6d. Scheduled net monthly income | $ (334.69) | 6h. Present net monthly income | $ 0 |
| Subtract lines 6b and 6c from 6a. If the total is less than 0, put the number in brackets. | | Subtract lines 6f and 6g from 6e. If the total is less than 0, put the number in brackets. | |

7. **Are the income amounts on lines 6a and 6e different?**
   - ☑ No
   - ☐ Yes. Explain why they are different and complete line 10. _____
   _____

8. **Are the expense amounts on lines 6b and 6f different?**
   - ☐ No
   - ☑ Yes. Explain why they are different and complete line 10. My expenses are less in 6f than in 6b. I will cut out entertainment, food, charitable, medical, and misc. expenses+

9. **Is the net monthly income in line 6h less than 0?**
   - ☑ No
   - ☐ Yes. A presumption of hardship arises (unless the creditor is a credit union).
     Explain how the debtor will make monthly payments on the reaffirmed debt and pay other living expenses. Complete line 10.
     _____
     _____

10. **Debtor's certification about lines 7-9**

    If any answer on lines 7-9 is *Yes*, the debtor must sign here.

    If all the answers on lines 7-9 are *No*, go to line 11.

    I certify that each explanation on lines 7-9 is true and correct.

    ✗ _[signature]_                          ✗ _____
    Signature of Debtor 1                      Signature of Debtor 2 (Spouse Only in a Joint Case)

11. **Did an attorney represent the debtor in negotiating the reaffirmation agreement?**
    - ☐ No
    - ☑ Yes. Has the attorney executed a declaration or an affidavit to support the reaffirmation agreement?
      - ☐ No
      - ☑ Yes

---

**Part 2:** | **Sign Here**

Whoever fills out this form must sign here.

I certify that the attached agreement is a true and correct copy of the reaffirmation agreement between the parties identified on this *Cover Sheet for Reaffirmation Agreement*.

✗ _[signature]_                          Date _1/11/20_

Signature                                   MM / DD / YYYY

Cristian Figueroa

Printed Name

Check one:
- ☐ Debtor or Debtor's Attorney
- ☑ Creditor or Creditor's Attorney

**Form 240A - Reaffirmation Agreement (1/07)**
**(Local Form 4008-1)**

☐ **Presumption of Undue Hardship**
☑ **No Presumption of Undue Hardship**
(Check box as directed in Part D: Debtor's Statement in Support of Reaffirmation Agreement.)

# UNITED STATES BANKRUPTCY COURT
### District of _Minnestoa (St. Paul)_

In re _David A Geer_          Case No. _20-32319_

_____ Debtor        Chapter _7_

## REAFFIRMATION AGREEMENT

*[Indicate all documents included in this filing by checking each applicable box.]*

☑ Part A: Disclosures, Instructions, and     ☑ Part D: Debtor's Statement in
     Notice to Debtor (pages 1 - 5)              Support of Reaffirmation Agreement

☑ Part B: Reaffirmation Agreement

☑ Part C: Certification by Debtor's Attorney

**Name of Creditor:** _MN Housing Finance Agency_ c/o AmeriNat

☐ *[Check this box if]* Creditor is a Credit Union as defined in §19(b)(1)(a)(iv) of the
Federal Reserve Act

## PART A: DISCLOSURE STATEMENT, INSTRUCTIONS AND NOTICE TO DEBTOR

### 1. DISCLOSURE STATEMENT

***Before Agreeing to Reaffirm a Debt, Review These Important Disclosures:***

## SUMMARY OF REAFFIRMATION AGREEMENT

This Summary is made pursuant to the requirements of the Bankruptcy Code.

## AMOUNT REAFFIRMED

The amount of debt you have agreed to reaffirm:        $ _14,094.56_

*The amount of debt you have agreed to reaffirm includes all fees and costs (if any) that have accrued as of the date of this disclosure. Your credit agreement may obligate you to pay additional amounts which may come due after the date of this disclosure. Consult your credit agreement.*

*[The annual percentage rate can be disclosed in different ways, depending on the type of debt.]*

a.  If the debt is an extension of "credit" under an "open end credit plan," as those terms are defined in § 103 of the Truth in Lending Act, such as a credit card, the creditor may disclose the annual percentage rate shown in (i) below or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate disclosed, or that would have been disclosed, to the debtor in the most recent periodic statement prior to entering into the reaffirmation agreement described in Part B below or, if no such periodic statement was given to the debtor during the prior six months, the annual percentage rate as it would have been so disclosed at the time of the disclosure statement:  4.99     %.

*--- And/Or ---*

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: 4.99         %.  If different simple interest rates apply to different balances included in the amount reaffirmed, the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

b.  If the debt is an extension of credit other than under than an open end credit plan, the creditor may disclose the annual percentage rate shown in (I) below, or, to the extent this rate is not readily available or not applicable, the simple interest rate shown in (ii) below, or both.

(i)  The Annual Percentage Rate under §128(a)(4) of the Truth in Lending Act, as disclosed to the debtor in the most recent disclosure statement given to the debtor prior to entering into the reaffirmation agreement with respect to the debt or, if no such disclosure statement was given to the debtor, the annual percentage rate as it would have been so disclosed: _____ %.

*--- And/Or ---*

(ii)  The simple interest rate applicable to the amount reaffirmed as of the date this disclosure statement is given to the debtor: _____ %.  If different simple interest rates apply to different balances included in the amount reaffirmed,

the amount of each balance and the rate applicable to it are:

$ _____ @ _____ %;
$ _____ @ _____ %;
$ _____ @ _____ %.

c. If the underlying debt transaction was disclosed as a variable rate transaction on the most recent disclosure given under the Truth in Lending Act:

The interest rate on your loan may be a variable interest rate which changes from time to time, so that the annual percentage rate disclosed here may be higher or lower.

d. If the reaffirmed debt is secured by a security interest or lien, which has not been waived or determined to be void by a final order of the court, the following items or types of items of the debtor's goods or property remain subject to such security interest or lien in connection with the debt or debts being reaffirmed in the reaffirmation agreement described in Part B.

| Item or Type of Item | Original Purchase Price or Original Amount of Loan |
|---|---|
| Secured Lien | 14,848.48 |

*Optional*---*At the election of the creditor, a repayment schedule using one or a combination of the following may be provided:*

**Repayment Schedule:**

Your first payment in the amount of $ <u>97.94</u> is due on <u>9/26/20</u> (date), but the future payment amount may be different. Consult your reaffirmation agreement or credit agreement, as applicable.

— *Or* —

Your payment schedule will be: _____ (number) payments in the amount of $_____ each, payable (monthly, annually, weekly, etc.) on the _____ (day) of each _____ ( week, month, etc.), unless altered later by mutual agreement in writing.

— *Or* —

A reasonably specific description of the debtor's repayment obligations to the extent known by the creditor or creditor's representative.

## 2. INSTRUCTIONS AND NOTICE TO DEBTOR

**Reaffirming a debt is a serious financial decision.**  The law requires you to take certain steps to make sure the decision is in your best interest. If these steps are not completed, the reaffirmation agreement is not effective, even though you have signed it.

1. Read the disclosures in this Part A carefully. Consider the decision to reaffirm carefully.  Then, if you want to reaffirm, sign the reaffirmation agreement in Part B (or you may use a separate agreement you and your creditor agree on).

2. Complete and sign Part D and be sure you can afford to make the payments you are agreeing to make and have received a copy of the disclosure statement and a completed and signed reaffirmation agreement.

3. If you were represented by an attorney during the negotiation of your reaffirmation agreement, the attorney must have signed the certification in Part C.

4. [Abrogated]

5. The original of this disclosure must be filed with the court by you or your creditor. If a separate reaffirmation agreement (other than the one in Part B) has been signed, it must be attached.

6. If the creditor is not a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court unless the reaffirmation is presumed to be an undue hardship as explained in Part D.  If the creditor is a Credit Union and you were represented by an attorney during the negotiation of your reaffirmation agreement, your reaffirmation agreement becomes effective upon filing with the court.

7. If you were not represented by an attorney during the negotiation of your reaffirmation agreement, it will not be effective unless the court approves it. The court will notify you and the creditor of the hearing on your reaffirmation agreement. You must attend this hearing in bankruptcy court where the judge will review your reaffirmation agreement. The bankruptcy court must approve your reaffirmation agreement as consistent with your best interests, except that no court approval is required if your reaffirmation agreement is for a consumer debt secured by a mortgage, deed of trust, security deed, or other lien on your real property, like your home.

## YOUR RIGHT TO RESCIND (CANCEL) YOUR REAFFIRMATION AGREEMENT

You may rescind (cancel) your reaffirmation agreement at any time before the bankruptcy court enters a discharge order, or before the expiration of the 60-day period that begins on the date your reaffirmation agreement is filed with the court, whichever occurs later. To rescind (cancel) your reaffirmation agreement, you must notify the creditor that your reaffirmation agreement is rescinded (or canceled).

**Frequently Asked Questions:**

What are your obligations if you reaffirm the debt? A reaffirmed debt remains your personal legal obligation. It is not discharged in your bankruptcy case. That means that if you default on your reaffirmed debt after your bankruptcy case is over, your creditor may be able to take your property or your wages. Otherwise, your obligations will be determined by the reaffirmation agreement which may have changed the terms of the original agreement. For example, if you are reaffirming an open end credit agreement, the creditor may be permitted by that agreement or applicable law to change the terms of that agreement in the future under certain conditions.

Are you required to enter into a reaffirmation agreement by any law? No, you are not required to reaffirm a debt by any law. Only agree to reaffirm a debt if it is in your best interest. Be sure you can afford the payments you agree to make.

What if your creditor has a security interest or lien? Your bankruptcy discharge does not eliminate any lien on your property. A ''lien'' is often referred to as a security interest, deed of trust, mortgage or security deed. Even if you do not reaffirm and your personal liability on the debt is discharged, because of the lien your creditor may still have the right to take the security property if you do not pay the debt or default on it. If the lien is on an item of personal property that is exempt under your State's law or that the trustee has abandoned, you may be able to redeem the item rather than reaffirm the debt. To redeem, you make a single payment to the creditor equal to the current value of the security property, as agreed by the parties or determined by the court.

**NOTE:** When this disclosure refers to what a creditor ''may'' do, it does not use the word ''may'' to give the creditor specific permission. The word ''may'' is used to tell you what might occur if the law permits the creditor to take the action. If you have questions about your reaffirming a debt or what the law requires, consult with the attorney who helped you negotiate this agreement reaffirming a debt. If you don't have an attorney helping you, the judge will explain the effect of your reaffirming a debt when the hearing on the reaffirmation agreement is held.

**PART B: REAFFIRMATION AGREEMENT.**

I (we) agree to reaffirm the debts arising under the credit agreement described below.

1.  Brief description of credit agreement:

2.  Description of any changes to the credit agreement made as part of this reaffirmation agreement:

SIGNATURE(S):

Borrower:                                                Accepted by creditor:

David Geer
_____                                 AmeriNat
_____
(Print Name)                                            (Printed Name of Creditor)

_David Geer_                                            8121 E. Florence Ave Downey, CA 90240
_____                                 _____
(Signature)                                             (Address of Creditor)

Date: 11/4/2020                                         _____
                                                        (Signature)

                                                        Cristian Figueroa-BK Manager
Co-borrower, if also reaffirming these debts:           _____

_____                                 (Printed Name and Title of Individual
(Print Name)                                            Signing for Creditor)

_____                                 Date of creditor acceptance:
(Signature)

Date: _____                                   11/11/2020
                                                        _____

**PART C: CERTIFICATION BY DEBTOR'S ATTORNEY (IF ANY).**

*[To be filed only if the attorney represented the debtor during the course of negotiating this agreement.]*

I hereby certify that (1) this agreement represents a fully informed and voluntary agreement by the debtor; (2) this agreement does not impose an undue hardship on the debtor or any dependent of the debtor; and (3) I have fully advised the debtor of the legal effect and consequences of this agreement and any default under this agreement.

☐ *[Check box, if applicable and the creditor is not a Credit Union.]* A presumption of undue hardship has been established with respect to this agreement. In my opinion, however, the debtor is able to make the required payment.

Printed Name of Debtor's Attorney: Douglas D. Kluver

Signature of Debtor's Attorney: *Douglas D. Kl—*

Date: 11/4/20

**PART D: DEBTOR'S STATEMENT IN SUPPORT OF REAFFIRMATION AGREEMENT**

*[Read and complete sections 1 and 2, **OR**, if the creditor is a Credit Union and the debtor is represented by an attorney, read section 3. Sign the appropriate signature line(s) and date your signature. If you complete sections 1 and 2 **and** your income less monthly expenses does not leave enough to make the payments under this reaffirmation agreement, check the box at the top of page 1 indicating "Presumption of Undue Hardship." Otherwise, check the box at the top of page 1 indicating "No Presumption of Undue Hardship"]*

    1. I believe this reaffirmation agreement will not impose an undue hardship on my dependents or me. I can afford to make the payments on the reaffirmed debt because my monthly income (take home pay plus any other income received) is $3424.13 and my actual current monthly expenses including monthly payments on post-bankruptcy debt and other reaffirmation agreements total $5326.19, leaving $97.94 to make the required payments on this reaffirmed debt.

    I understand that if my income less my monthly expenses does not leave enough to make the payments, this reaffirmation agreement is presumed to be an undue hardship on me and must be reviewed by the court. However, this presumption may be overcome if I explain to the satisfaction of the court how I can afford to make the payments here: _____

_____

_____ .

    **(Use an additional page if needed for a full explanation.)**

    2. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
      (Debtor)

    _____
      (Joint Debtor, if any)

Date: _____

                      — *Or* —

*[If the creditor is a Credit Union and the debtor is represented by an attorney]*

    3. I believe this reaffirmation agreement is in my financial interest. I can afford to make the payments on the reaffirmed debt. I received a copy of the Reaffirmation Disclosure Statement in Part A and a completed and signed reaffirmation agreement.

Signed: _____
      (Debtor)

    _____
      (Joint Debtor, if any)

Date: _____



# AMERINAT®

8121 E. Florence Avenue Downey, CA  90240

Account Payoff Quotation

To:   David A Geer
      144 5th Ave
      Granite Falls, MN 56241

Attn.: _____

Loan: xxxxxx9416

In response to your request for a Demand/Beneficiary Statement for
our records indicate the following:

                                              David A Geer
                                              144 5th Ave
                                              Granite Falls, MN 56241

| | | | |
|---|---|---|---|
| Unpaid Principal Balance: | $14,031.26 | Interest Rate: | 4.99% |
| Unpaid Accrued Interest: | $0.00 | Interest Paid To: | 8/28/2020 |
| Interest From  8/28/2020 | | Daily Interest: | $1.92 |
| | $63.30 | Monthly Payment: | $97.94 |
| Late Charges: | $0.00 | Next Due Date: | 9/26/2020 |
| NSF Fee(s): | | Maturity Date: | 10/26/2038 |
| Foreclosure Fees/Costs: | $0.00 | | |
| Attorney Fees/Costs | $0.00 | | |
| Reconveyance Fee: | $0.00 | | |
| Recording Fee: | $0.00 | | |
| Documentation Fee: | $0.00 | | |
| Escrow: | $0.00 | | |
| Unapplied: | $0.00 | | |
| **Total Payoff:** | $14,094.56 | **Amount Good To:** | 9/30/2020 |

*Make check or moneyorder payable to **AmeriNat**
*Funds must be in the form of a cashier's check or money order.
*Interest to accrue until the day payoff is received in this office.
*Please call prior to funding for updated figures to (800) 943-1988 ext 1231

Note:  **FOR INFORMATION PURPOSES ONLY TO BE USED FOR BANKRUPTCY**

Prepared By: _____          October 1, 2020
              Cristian Figueroa , Collections Representative        Date
              AmeriNat

Phone: (800) 943-1988 ext 7903        Fax: (562) 928-9171        www.amerinatls.com

# Fix Up Loan
## SECURED No Automated Payment via Automated Clearing House (ACH) NOTE

**Date:** October 22, 2018

**BORROWER NAME**

| Geer | David | A |
|---|---|---|
| Last | First | MI |

**CO-BORROWER NAME**

| Geer | Jennifer | L |
|---|---|---|
| Last | First | MI |

**PROPERTY ADDRESS**

| 144 5th Ave | Granite Falls |
|---|---|
| Street | City |

| Yellow Medicine | 56241 |
|---|---|
| County | Zip |

**LENDER INFORMATION**

Heritage Bank N.A.
Lender Name

310 1st St SW, Willmar, MN 56201
Lender Address

**BORROWER'S AGREEMENT TO PAY**

I agree to pay to the order of the Lender, the amount of Fourteen Thousand Eight Hundred Forty-Eight Dollars and 48 Cents ( $14,848.48 ) (the "Loan"), plus interest on the unpaid balance at the rate of 4.99 % per year. Interest on the Loan will be calculated using the "simple interest" method. This means that the actual interest I pay will depend on the unpaid balance at the end of each day. Interest starts on the date of this Note and continues until the Loan is paid in full. Beginning on November 26, 2018 and on the same calendar day of each succeeding month until the entire indebtedness has been paid in full Borrower agrees to pay $97.94 in equal installments consisting of principal and interest, over a term of 240 months. The balance of any remaining unpaid principal plus accrued interest, is due and payable on October 26, 2038 . Each installment payment will be applied first to interest accrued on the then unpaid principal balance and the balance will be applied in reduction of principal. I will send all of the payments required to the Lender at its address shown above, or at such other address, as Lender may from time to time give me notice in writing.

**SECURITY INTEREST**

This Note is secured by a mortgage on my residence.

**BORROWER MAKES THE FOLLOWING PROMISES:**

1. The property identified above ("my residence") to be improved is my principal residence.

2. My residence is a completed home and is a year-round permanent residence.

3. My residence is permanently attached to the land by way of a foundation and is taxed as real property.

4. I will not use more than 49% of my residence primarily for business purposes.

5. I have at least a one-third interest in my residence, either as owner, as holder of a life estate, or as a buyer under a contract for deed.

**PREPAYMENT**

I may prepay part of the Loan at any time without a prepayment penalty. However, partial prepayment will not excuse me from paying the required monthly amount on schedule until my loan is paid in full.

**ADDITIONAL TERMS**

1. I will be in default if:

   A. I do not make a payment when due or in the full amount;

   B. I made misstatements on my loan application;

   C. I do not keep required insurance on my residence;

   D. I use my residence for an unlawful purpose;

   E. An event of default occurs under any mortgage covering my residence;

   F. I transfer any or all interest in my residence without paying the Loan in full;

   G. I do not live up to any promise I have made in this Note; or

   H. My residence is not used as my principal residence.

2. If I am in default, Lender may require immediate payment of the unpaid balance of this Note, including the interest I owe. Lender may also foreclose and sell my residence and use the money from the sale of the property to pay the Loan. Lender may also exercise any other legal rights Lender may have. However, even if I am in default, Lender does not have to require immediate payment. Lender may delay enforcing any of Lender's rights without losing them.

3. I must pay any reasonable attorney's fees, legal expenses, and costs of collection that result from my default (unless prohibited by law).

4. Anyone buying an interest in my residence may not be allowed to assume the remainder of my debt on the original terms unless they obtain the consent of the holder of this Note.

5. No amendment or modification of this Note will be effective unless it is in writing and signed by me and the holder of this Note.

6. No waiver by the Lender of any term or condition of this Note will be valid unless it is in writing and signed by the Lender, nor will any such waiver be deemed a continuing waiver of such term or condition.

7. This Note is binding upon execution and will extend to the parties and their respective successors and permitted assigns.

8. Any notice that must be given under this Note will be given by delivering or mailing, by certified mail, such notice to the address shown above for Lender, or such other address as Lender may designate in writing, and to the Property Address shown above for Borrower.

9. This Note is controlled by the laws of the State of Minnesota.

10. The Lender or an authorized representative of the Lender has the right to inspect my residence at any time from the date of the Note, upon giving reasonable notice to me.

11. I/We certify that the Loan funds will be used only for the eligible Improvements listed in the loan application and that the improvements will be completed within nine months from the date of this Note.

12. I/We understand that the Loan may be selected by the Lender for a quality control review. This review is designed to produce and maintain quality service for borrowers, and to confirm compliance with agency and investor guidelines. The quality control review may involve verification of the credit information (including employment history, income, bank accounts, and credit references) as well as the property valuation. I/We agree to cooperate to the extent necessary to accomplish this review.

**SIGNATURES**

Borrower's Signature.
I received a copy of this Note before signing it. I agree to all of its terms.

_____
Borrower's Signature

Co-Borrower's Signature
The person signing here is the Co-Borrower. The Co-Borrower has the same responsibilities under this Note as the person who is signing this Note as Borrower.

_____
Co-Borrower's Signature

**FOR GUARANTOR'S USE ONLY:**

The person signing here is the Guarantor. The Lender may require the Guarantor to pay the Loan at any time after it becomes due, whether or not the Lender has then made any effort to collect the Loan from the Borrower or Co-Borrower. The Guarantor will continue to be responsible even if the Lender releases its security interest in property described above, consents to changes in this Note, or releases any other person from responsibility. The Guarantor must also pay any attorney's fees and other costs of enforcing this guaranty. **See Notice to Guarantor below.**

Guarantor's Name (if any):

_____

Guarantor's Address:

_____

_____
Guarantor's Signature

**NOTICE TO GUARANTOR**

You are being asked to guarantee this debt. Think carefully before you do. If the Borrower doesn't pay the debt, you will have to. Be sure you can afford to pay if you have to, and that you want to accept this responsibility. You may have to pay up to the full amount of the debt if the Borrower does not pay. You may also have to pay late fees or collection costs, which increase this amount. The Lender can collect this debt from you without first trying to collect from the Borrower. The Lender can use the same collection methods against you that can be used against the Borrower, including, but not limited to, suing you or garnishing your wages. If this debt is ever in default, this fact may become a part of your credit record.

ENDORSEMENT TO MINNESOTA HOUSING FINANCE AGENCY

Without recourse, pay to the order of the Minnesota Housing Finance Agency.

Lender: Heritage Bank N.A.

310 1st St SW, Willmar, MN  56201

By: *Christine K. che*

Its: *Vice President*

**TIL and NMLSR ID**

Heritage Bank N.A.
Loan Originator Company Name

*Amy Tillemans*
Loan Originator Individual Name
(as name appears on NMLSR)

*446440*
Loan Originator Company NMLSR ID

*121448 7*
Loan Originator Individual NMLSR ID
(if applicable)

DEC 2 1 2018

Doc# 269611  Fee: $80.15  8 Pages
Property & Public Services
Property Records Division
Yellow Medicine County, Minnesota
I hereby certify that the within instrument
was filed on November 1, 2018 at 10:15 AM

Janel Timm, Yellow Medicine County Recorder

By _Kelly Krueger_ Deputy

Registration Tax Paid $ 34.15

Date Nov. 1, 2018 No. 125391
Janel Timm, Property & Public Services Director

_Debra Blood_

# MORTGAGE

**RECORDATION REQUESTED BY:**
  HERITAGE BANK NATIONAL ASSOCIATION
  WILLMAR MN BRANCH
  110 SOUTH ST W
  PO BOX 658
  SPICER, MN 56288-0658

**WHEN RECORDED MAIL TO:**
  HERITAGE BANK NATIONAL ASSOCIATION
  WILLMAR BRANCH
  310 1ST STREET SW
  WILLMAR, MN 56201

**SEND TAX NOTICES TO:**
  HERITAGE BANK NATIONAL ASSOCIATION
  WILLMAR MN BRANCH
  110 SOUTH ST W
  PO BOX 658
  SPICER, MN 56288-0658

---

**MAXIMUM LIEN.   NOTWITHSTANDING ANYTHING TO THE CONTRARY HEREIN, THE MAXIMUM INDEBTEDNESS SECURED BY THIS MORTGAGE IS $14,848.48.**

**THIS MORTGAGE dated October 22, 2018,** is made and executed between DAVID A GEER and JENNIFER L GEER, HUSBAND AND WIFE (referred to below as "Grantor") and HERITAGE BANK NATIONAL ASSOCIATION, whose address is 110 SOUTH ST W, PO BOX 658, SPICER, MN 56288-0658 (referred to below as "Lender").

**GRANT OF MORTGAGE. For valuable consideration,** Grantor mortgages and conveys to Lender, with power of sale, all of Grantor's right, title, and interest in and to the following described real property, together with all existing or subsequently erected or affixed buildings, improvements and fixtures; all easements, rights of way, and appurtenances; all water, water rights, watercourses and ditch rights (including stock in utilities with ditch or irrigation rights); and all other rights, royalties, and profits relating to the real property, including without limitation all minerals, oil, gas, geothermal and similar matters, (the "Real Property") located in Yellow Medicine County County, State of Minnesota:

  LOT 16, BLOCK 19 EXCEPT THE EASTERLY 2 FEET OF LOT 16, ORIGINAL PLAT TO THE CITY OF GRANITE FALLS

**The Real Property or its address is commonly known as  144 5th Ave, Granite Falls, MN 56241.  The Real Property tax identification number is 34-300-1916.**

In addition, Grantor grants to Lender a Uniform Commercial Code security interest in the Personal Property.

**THIS MORTGAGE, INCLUDING THE SECURITY INTEREST IN PERSONAL PROPERTY, IS GIVEN TO SECURE  (A)  PAYMENT OF THE INDEBTEDNESS AND  (B)  PERFORMANCE OF ANY AND ALL OBLIGATIONS UNDER THE NOTE AND THIS MORTGAGE.  THIS MORTGAGE IS GIVEN AND ACCEPTED ON THE FOLLOWING TERMS:**

**PAYMENT AND PERFORMANCE.** Except as otherwise provided in this Mortgage, Grantor shall pay to Lender all amounts secured by this Mortgage as they become due and shall strictly perform all of Grantor's obligations under this Mortgage.

**POSSESSION AND MAINTENANCE OF THE PROPERTY.** Grantor agrees that Grantor's possession and use of the Property shall be governed by the following provisions:

  **Possession and Use.** Until the occurrence of an Event of Default, Grantor may  (1)  remain in possession and control of the Property;

(2)  use, operate or manage the Property; and  (3)  collect the Rents from the Property.

**Duty to Maintain.**  Grantor shall maintain the Property in good condition and promptly perform all repairs, replacements, and maintenance necessary to preserve its value.

**Compliance With Environmental Laws.**  Grantor represents and warrants to Lender that: (1)  During the period of Grantor's ownership of the Property, there has been no use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance by any person on, under, about or from the Property; (2)  Grantor has no knowledge of, or reason to believe that there has been, except as previously disclosed to and acknowledged by Lender in writing, (a)  any breach or violation of any Environmental Laws,  (b)  any use, generation, manufacture, storage, treatment, disposal, release or threatened release of any Hazardous Substance on, under, about or from the Property by any prior owners or occupants of the Property, or (c)  any actual or threatened litigation or claims of any kind by any person relating to such matters; and  (3)  Except as previously disclosed to and acknowledged by Lender in writing, (a)  neither Grantor nor any tenant, contractor, agent or other authorized user of the Property shall use, generate, manufacture, store, treat, dispose of or release any Hazardous Substance on, under, about or from the Property; and  (b)  any such activity shall be conducted in compliance with all applicable federal, state, and local laws, regulations and ordinances, including without limitation all Environmental Laws.  Grantor authorizes Lender and its agents to enter upon the Property to make such inspections and tests, at Grantor's expense, as Lender may deem appropriate to determine compliance of the Property with this section of the Mortgage.  Any inspections or tests made by Lender shall be for Lender's purposes only and shall not be construed to create any responsibility or liability on the part of Lender to Grantor or to any other person.  The representations and warranties contained herein are based on Grantor's due diligence in investigating the Property for Hazardous Substances.  Grantor hereby (1)  releases and waives any future claims against Lender for indemnity or contribution in the event Grantor becomes liable for cleanup or other costs under any such laws; and  (2)  agrees to indemnify, defend, and hold harmless Lender against any and all claims, losses, liabilities, damages, penalties, and expenses, including attorneys' fees, consultants' fees, and costs which Lender may directly or indirectly sustain or suffer resulting from a breach of this section of the Mortgage or as a consequence of any use, generation, manufacture, storage, disposal, release or threatened release occurring prior to Grantor's ownership or interest in the Property, whether or not the same was or should have been known to Grantor.  The provisions of this section of the Mortgage, including the obligation to indemnify and defend, shall survive the payment of the Indebtedness and the satisfaction and reconveyance of the lien of this Mortgage and shall not be affected by Lender's acquisition of any interest in the Property, whether by foreclosure or otherwise.

**Nuisance, Waste.**  Grantor shall not cause, conduct or permit any nuisance nor commit, permit, or suffer any stripping of or waste on or to the Property or any portion of the Property.  Without limiting the generality of the foregoing, Grantor will not remove, or grant to any other party the right to remove, any timber, minerals (including oil and gas), coal, clay, scoria, soil, gravel or rock products without Lender's prior written consent.

**Removal of Improvements.**  Grantor shall not demolish or remove any Improvements from the Real Property without Lender's prior written consent.  As a condition to the removal of any Improvements, Lender may require Grantor to make arrangements satisfactory to Lender to replace such Improvements with Improvements of at least equal value.

**Lender's Right to Enter.**  Lender and Lender's agents and representatives may enter upon the Real Property at all reasonable times to attend to Lender's interests and to inspect the Real Property for purposes of Grantor's compliance with the terms and conditions of this Mortgage.

**Compliance with Governmental Requirements.**  Grantor shall promptly comply with all laws, ordinances, and regulations, now or hereafter in effect, of all governmental authorities applicable to the use or occupancy of the Property.  Grantor may contest in good faith any such law, ordinance, or regulation and withhold compliance during any proceeding, including appropriate appeals, so long as Grantor has notified Lender in writing prior to doing so and so long as, in Lender's sole opinion, Lender's interests in the Property are not jeopardized.  Lender may require Grantor to post adequate security or a surety bond, reasonably satisfactory to Lender, to protect Lender's interest.

**Duty to Protect.**  Grantor agrees neither to abandon or leave unattended the Property.  Grantor shall do all other acts, in addition to those acts set forth above in this section, which from the character and use of the Property are reasonably necessary to protect and preserve the Property.

**DUE ON SALE - CONSENT BY LENDER.**  Lender may, at Lender's option, declare immediately due and payable all sums secured by this Mortgage upon the sale or transfer, without Lender's prior written consent, of all or any part of the Real Property, or any interest in the Real Property.  A "sale or transfer" means the conveyance of Real Property or any right, title or interest in the Real Property; whether legal, beneficial or equitable; whether voluntary or involuntary; whether by outright sale, deed, installment sale contract, land contract, contract for deed, leasehold interest with a term greater than three (3) years, lease-option contract, or by sale, assignment, or transfer of any beneficial interest in or to any land trust holding title to the Real Property, or by any other method of conveyance of an interest in the Real Property.  However, this option shall not be exercised by Lender if such exercise is prohibited by federal law or by Minnesota law.

**TAXES AND LIENS.**  The following provisions relating to the taxes and liens on the Property are part of this Mortgage:

**Payment.**  Grantor shall pay when due (and in all events prior to delinquency) all taxes, payroll taxes, special taxes, assessments, water charges and sewer service charges levied against or on account of the Property, and shall pay when due all claims for work done on or for services rendered or material furnished to the Property.  Grantor shall maintain the Property free of any liens having priority over or equal to the interest of Lender under this Mortgage, except for the Existing Indebtedness referred to in this Mortgage or those liens specifically agreed to in writing by Lender, and except for the lien of taxes and assessments not due as further specified in the Right to Contest paragraph.

**Right to Contest.**  Grantor may withhold payment of any tax, assessment, or claim in connection with a good faith dispute over the obligation to pay, so long as Lender's interest in the Property is not jeopardized.  If a lien arises or is filed as a result of nonpayment, Grantor shall within fifteen (15) days after the lien arises or, if a lien is filed, within fifteen (15) days after Grantor has notice of the filing, secure the discharge of the lien, or if requested by Lender, deposit with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender in an amount sufficient to discharge the lien plus any costs and reasonable attorneys' fees, or

other charges that could accrue as a result of a foreclosure or sale under the lien. In any contest, Grantor shall defend itself and Lender and shall satisfy any adverse judgment before enforcement against the Property. Grantor shall name Lender as an additional obligee under any surety bond furnished in the contest proceedings.

**Evidence of Payment.** Grantor shall upon demand furnish to Lender satisfactory evidence of payment of the taxes or assessments and shall authorize the appropriate governmental official to deliver to Lender at any time a written statement of the taxes and assessments against the Property.

**Notice of Construction.** Grantor shall notify Lender at least fifteen (15) days before any work is commenced, any services are furnished, or any materials are supplied to the Property, if any mechanic's lien, materialmen's lien, or other lien could be asserted on account of the work, services, or materials. Grantor will upon request of Lender furnish to Lender advance assurances satisfactory to Lender that Grantor can and will pay the cost of such improvements.

**PROPERTY DAMAGE INSURANCE.** The following provisions relating to insuring the Property are a part of this Mortgage:

**Maintenance of Insurance.** Grantor shall procure and maintain policies of fire insurance with standard extended coverage endorsements on a replacement basis for the full insurable value covering all Improvements on the Real Property in an amount sufficient to avoid application of any coinsurance clause, and with a standard mortgagee clause in favor of Lender. Policies shall be written by such insurance companies and in such form as may be reasonably acceptable to Lender. Grantor shall deliver to Lender certificates of coverage from each insurer containing a stipulation that coverage will not be cancelled or diminished without a minimum of thirty (30) days' prior written notice to Lender and not containing any disclaimer of the insurer's liability for failure to give such notice. Each insurance policy also shall include an endorsement providing that coverage in favor of Lender will not be impaired in any way by any act, omission or default of Grantor or any other person. Should the Real Property be located in an area designated by the Administrator of the Federal Emergency Management Agency as a special flood hazard area, Grantor agrees to obtain and maintain Federal Flood Insurance, if available, within 45 days after notice is given by Lender that the Property is located in a special flood hazard area, for the full unpaid principal balance of the loan and any prior liens on the property securing the loan, up to the maximum policy limits set under the National Flood Insurance Program, or as otherwise required by Lender, and to maintain such insurance for the term of the loan.

**Application of Proceeds.** Grantor shall promptly notify Lender of any loss or damage to the Property. Lender may make proof of loss if Grantor fails to do so within fifteen (15) days of the casualty. Whether or not Lender's security is impaired, Lender may, at Lender's election, receive and retain the proceeds of any insurance and apply the proceeds to the reduction of the Indebtedness, payment of any lien affecting the Property, or the restoration and repair of the Property. If Lender elects to apply the proceeds to restoration and repair, Grantor shall repair or replace the damaged or destroyed Improvements in a manner satisfactory to Lender. Lender shall, upon satisfactory proof of such expenditure, pay or reimburse Grantor from the proceeds for the reasonable cost of repair or restoration if Grantor is not in default under this Mortgage. Any proceeds which have not been disbursed within 180 days after their receipt and which Lender has not committed to the repair or restoration of the Property shall be used first to pay any amount owing to Lender under this Mortgage, then to pay accrued interest, and the remainder, if any, shall be applied to the principal balance of the Indebtedness. If Lender holds any proceeds after payment in full of the Indebtedness, such proceeds shall be paid to Grantor as Grantor's interests may appear.

**Compliance with Existing Indebtedness.** During the period in which any Existing Indebtedness described below is in effect, compliance with the insurance provisions contained in the instrument evidencing such Existing Indebtedness shall constitute compliance with the insurance provisions under this Mortgage, to the extent compliance with the terms of this Mortgage would constitute a duplication of insurance requirement. If any proceeds from the insurance become payable on loss, the provisions in this Mortgage for division of proceeds shall apply only to that portion of the proceeds not payable to the holder of the Existing Indebtedness.

**LENDER'S EXPENDITURES.** If Grantor fails (A) to keep the Property free of all taxes, liens, security interests, encumbrances, and other claims, (B) to provide any required insurance on the Property, (C) to make repairs to the Property or to comply with any obligation to maintain Existing Indebtedness in good standing as required below, then Lender may do so. If any action or proceeding is commenced that would materially affect Lender's interests in the Property, then Lender on Grantor's behalf may, but is not required to, take any action that Lender believes to be appropriate to protect Lender's interests. All expenses incurred or paid by Lender for such purposes will then bear interest at the rate charged under the Note from the date incurred or paid by Lender to the date of repayment by Grantor. All such expenses will become a part of the Indebtedness and, at Lender's option, will (A) be payable on demand; (B) be added to the balance of the Note and be apportioned among and be payable with any installment payments to become due during either (1) the term of any applicable insurance policy; or (2) the remaining term of the Note; or (C) be treated as a balloon payment which will be due and payable at the Note's maturity. The Mortgage also will secure payment of these amounts. The rights provided for in this paragraph shall be in addition to any other rights or any remedies to which Lender may be entitled on account of any default. Any such action by Lender shall not be construed as curing the default so as to bar Lender from any remedy that it otherwise would have had.

**WARRANTY; DEFENSE OF TITLE.** The following provisions relating to ownership of the Property are a part of this Mortgage:

**Title.** Grantor warrants that: (a) Grantor holds good and marketable title of record to the Property in fee simple, free and clear of all liens and encumbrances other than those set forth in the Real Property description or in the Existing Indebtedness section below or in any title insurance policy, title report, or final title opinion issued in favor of, and accepted by, Lender in connection with this Mortgage, and (b) Grantor has the full right, power, and authority to execute and deliver this Mortgage to Lender.

**Defense of Title.** Subject to the exception in the paragraph above, Grantor warrants and will forever defend the title to the Property against the lawful claims of all persons. In the event any action or proceeding is commenced that questions Grantor's title or the interest of Lender under this Mortgage, Grantor shall defend the action at Grantor's expense. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of Lender's own choice, and Grantor will deliver, or cause to be delivered, to Lender such instruments as Lender may request from time to time to permit such participation.

**Compliance With Laws.** Grantor warrants that the Property and Grantor's use of the Property complies with all existing applicable laws, ordinances, and regulations of governmental authorities.

**Survival of Promises.** All promises, agreements, and statements Grantor has made in this Mortgage shall survive the execution and delivery of this Mortgage, shall be continuing in nature and shall remain in full force and effect until such time as Grantor's Indebtedness is paid in full.

**EXISTING INDEBTEDNESS.** The following provisions concerning Existing Indebtedness are a part of this Mortgage:

**Existing Lien.** The lien of this Mortgage securing the Indebtedness may be secondary and inferior to the lien securing payment of an existing obligation with an account number of 20160422 to JENNIFER L GEER. The existing obligation has a current principal balance of approximately $49,869.88 and is in the original principal amount of $53,000.00. The obligation has the following payment terms: $527.00 per Month. Grantor expressly covenants and agrees to pay, or see to the payment of, the Existing Indebtedness and to prevent any default on such indebtedness, any default under the instruments evidencing such indebtedness, or any default under any security documents for such indebtedness.

**No Modification.** Grantor shall not enter into any agreement with the holder of any mortgage, deed of trust, or other security agreement which has priority over this Mortgage by which that agreement is modified, amended, extended, or renewed without the prior written consent of Lender. Grantor shall neither request nor accept any future advances under any such security agreement without the prior written consent of Lender.

**CONDEMNATION.** The following provisions relating to condemnation proceedings are a part of this Mortgage:

**Proceedings.** If any proceeding in condemnation is filed, Grantor shall promptly notify Lender in writing, and Grantor shall promptly take such steps as may be necessary to defend the action and obtain the award. Grantor may be the nominal party in such proceeding, but Lender shall be entitled to participate in the proceeding and to be represented in the proceeding by counsel of its own choice, and Grantor will deliver or cause to be delivered to Lender such instruments and documentation as may be requested by Lender from time to time to permit such participation.

**Application of Net Proceeds.** If all or any part of the Property is condemned by eminent domain proceedings or by any proceeding or purchase in lieu of condemnation, Lender may at its election require that all or any portion of the net proceeds of the award be applied to the Indebtedness or the repair or restoration of the Property. The net proceeds of the award shall mean the award after payment of all reasonable costs, expenses, and attorneys' fees incurred by Lender in connection with the condemnation.

**IMPOSITION OF TAXES, FEES AND CHARGES BY GOVERNMENTAL AUTHORITIES.** The following provisions relating to governmental taxes, fees and charges are a part of this Mortgage:

**Current Taxes, Fees and Charges.** Upon request by Lender, Grantor shall execute such documents in addition to this Mortgage and take whatever other action is requested by Lender to perfect and continue Lender's lien on the Real Property. Grantor shall reimburse Lender for all taxes, as described below, together with all expenses incurred in recording, perfecting or continuing this Mortgage, including without limitation all taxes, fees, documentary stamps, and other charges for recording or registering this Mortgage.

**Taxes.** The following shall constitute taxes to which this section applies: (1) a specific tax upon this type of Mortgage or upon all or any part of the Indebtedness secured by this Mortgage; (2) a specific tax on Grantor which Grantor is authorized or required to deduct from payments on the Indebtedness secured by this type of Mortgage; (3) a tax on this type of Mortgage chargeable against the Lender or the holder of the Note; and (4) a specific tax on all or any portion of the Indebtedness or on payments of principal and interest made by Grantor.

**Subsequent Taxes.** If any tax to which this section applies is enacted subsequent to the date of this Mortgage, this event shall have the same effect as an Event of Default, and Lender may exercise any or all of its available remedies for an Event of Default as provided below unless Grantor either (1) pays the tax before it becomes delinquent, or (2) contests the tax as provided above in the Taxes and Liens section and deposits with Lender cash or a sufficient corporate surety bond or other security satisfactory to Lender.

**SECURITY AGREEMENT; FINANCING STATEMENTS.** The following provisions relating to this Mortgage as a security agreement are a part of this Mortgage:

**Security Agreement.** This instrument shall constitute a Security Agreement to the extent any of the Property constitutes fixtures, and Lender shall have all of the rights of a secured party under the Uniform Commercial Code as amended from time to time.

**Security Interest.** Upon request by Lender, Grantor shall take whatever action is requested by Lender to perfect and continue Lender's security interest in the Personal Property. In addition to recording this Mortgage in the real property records, Lender may, at any time and without further authorization from Grantor, file executed counterparts, copies or reproductions of this Mortgage as a financing statement. Grantor shall reimburse Lender for all expenses incurred in perfecting or continuing this security interest. Upon default, Grantor shall not remove, sever or detach the Personal Property from the Property. Upon default, Grantor shall assemble any Personal Property not affixed to the Property in a manner and at a place reasonably convenient to Grantor and Lender and make it available to Lender within three (3) days after receipt of written demand from Lender to the extent permitted by applicable law.

**Addresses.** The mailing addresses of Grantor (debtor) and Lender (secured party) from which information concerning the security interest granted by this Mortgage may be obtained (each as required by the Uniform Commercial Code) are as stated on the first page of this Mortgage.

**FURTHER ASSURANCES; ATTORNEY-IN-FACT.** The following provisions relating to further assurances and attorney-in-fact are a part of this Mortgage:

**Further Assurances.** At any time, and from time to time, upon request of Lender, Grantor will make, execute and deliver, or will cause to be made, executed or delivered, to Lender or to Lender's designee, and when requested by Lender, cause to be filed, recorded, refiled, or rerecorded, as the case may be, at such times and in such offices and places as Lender may deem appropriate, any and all such mortgages, deeds of trust, security deeds, security agreements, financing statements, continuation statements, instruments of further assurance, certificates, and other documents as may, in the sole opinion of Lender, be necessary or desirable in order to effectuate, complete, perfect, continue, or preserve (1) Grantor's obligations under the Note, this Mortgage, and the Related Documents, and (2) the liens and security interests created by this Mortgage on the Property, whether now owned or hereafter acquired by Grantor. Unless prohibited by law or Lender agrees to the contrary in writing, Grantor shall reimburse Lender for all costs

and expenses incurred in connection with the matters referred to in this paragraph.

**Attorney-in-Fact.** If Grantor fails to do any of the things referred to in the preceding paragraph, Lender may do so for and in the name of Grantor and at Grantor's expense. For such purposes, Grantor hereby irrevocably appoints Lender as Grantor's attorney-in-fact for the purpose of making, executing, delivering, filing, recording, and doing all other things as may be necessary or desirable, in Lender's sole opinion, to accomplish the matters referred to in the preceding paragraph.

**FULL PERFORMANCE.** If Grantor pays all the Indebtedness when due, and otherwise performs all the obligations imposed upon Grantor under this Mortgage, Lender shall execute and deliver to Grantor a suitable satisfaction of this Mortgage and suitable statements of termination of any financing statement on file evidencing Lender's security interest in the Rents and the Personal Property. Grantor will pay, if permitted by applicable law, any reasonable termination fee as determined by Lender from time to time.

**EVENTS OF DEFAULT.** At Lender's option, Grantor will be in default under this Mortgage if any of the following happen:

**Payment Default.** Grantor fails to make any payment when due under the Indebtedness.

**Default on Other Payments.** Failure of Grantor within the time required by this Mortgage to make any payment for taxes or insurance, or any other payment necessary to prevent filing of or to effect discharge of any lien.

**Break Other Promises.** Grantor breaks any promise made to Lender or fails to perform promptly at the time and strictly in the manner provided in this Mortgage or in any agreement related to this Mortgage.

**False Statements.** Any representation or statement made or furnished to Lender by Grantor or on Grantor's behalf under this Mortgage or the Related Documents is false or misleading in any material respect, either now or at the time made or furnished.

**Defective Collateralization.** This Mortgage or any of the Related Documents ceases to be in full force and effect (including failure of any collateral document to create a valid and perfected security interest or lien) at any time and for any reason.

**Death or Insolvency.** The death of Grantor, the insolvency of Grantor, the appointment of a receiver for any part of Grantor's property, any assignment for the benefit of creditors, any type of creditor workout, or the commencement of any proceeding under any bankruptcy or insolvency laws by or against Grantor.

**Taking of the Property.** Any creditor or governmental agency tries to take any of the Property or any other of Grantor's property in which Lender has a lien. This includes taking of, garnishing of or levying on Grantor's accounts with Lender. However, if Grantor disputes in good faith whether the claim on which the taking of the Property is based is valid or reasonable, and if Grantor gives Lender written notice of the claim and furnishes Lender with monies or a surety bond satisfactory to Lender to satisfy the claim, then this default provision will not apply.

**Existing Indebtedness.** The payment of any installment of principal or any interest on the Existing Indebtedness is not made within the time required by the promissory note evidencing such indebtedness, or a default occurs under the instrument securing such indebtedness and is not cured during any applicable grace period in such instrument, or any suit or other action is commenced to foreclose any existing lien on the Property.

**Breach of Other Agreement.** Any breach by Grantor under the terms of any other agreement between Grantor and Lender that is not remedied within any grace period provided therein, including without limitation any agreement concerning any indebtedness or other obligation of Grantor to Lender, whether existing now or later.

**Events Affecting Guarantor.** Any of the preceding events occurs with respect to any guarantor, endorser, surety, or accommodation party of any of the Indebtedness or any guarantor, endorser, surety, or accommodation party dies or becomes incompetent, or revokes or disputes the validity of, or liability under, any Guaranty of the Indebtedness.

**RIGHTS AND REMEDIES ON DEFAULT.** Upon the occurrence of an Event of Default and at any time thereafter, Lender, at Lender's option, may exercise any one or more of the following rights and remedies, in addition to any other rights or remedies provided by law:

**Acceleration and Foreclosure.** Lender shall have the right to declare the entire Indebtedness immediately due and payable and shall have the right to foreclose Grantor's interest in all or any part of the Property by invoking the power of sale, by obtaining a judicial decree of foreclosure, or by any other means permitted by applicable law. If Lender invokes the power of sale, Lender shall serve any person in possession of the Property with a copy of the notice of sale, and Lender shall publish a notice of sale. The Property shall be sold at public auction in the manner prescribed by the statutes of Minnesota. Lender, or someone designated by Lender, may purchase the Property at any sale. Lender shall apply the proceeds of the sale of the Property as follows: (1) to reimbursement of Lender's expenses incurred in connection with the sale of the Property, including, but not limited to Lender's attorneys' fees and court costs allowed by law, (2) to the payment of the Indebtedness, and (3) any excess funds to be paid to Grantor or to any other person or persons legally entitled to such excess proceeds.

**UCC Remedies.** With respect to all or any part of the Personal Property, Lender shall have all the rights and remedies of a secured party under the Uniform Commercial Code. If notice to Grantor of the intended disposition of the Personal Property is required by law in a particular instance, such notice shall be deemed commercially reasonable if given to Grantor at least ten (10) calendar days prior to the date of intended disposition. Grantor shall pay on demand all costs and expenses, including but not limited to reasonable attorneys' fees and legal expenses, incurred by Lender in exercising these rights and remedies.

**Other Remedies.** Lender shall have all other rights and remedies provided in this Mortgage or the Note or available at law or in equity.

**Sale of the Property.** To the extent permitted by applicable law, Grantor hereby waives any and all right to have the Property marshalled. In exercising its rights and remedies, Lender shall be free to sell all or any part of the Property together or separately, in one sale or by separate sales. Lender shall be entitled to bid at any public sale on all or any portion of the Property.

**Notice of Sale.** Lender will give Grantor reasonable notice of the time and place of any public sale of the Personal Property or of the time after which any private sale or other intended disposition of the Personal Property is to be made. Reasonable notice shall mean notice given at least ten (10) days before the time of the sale or disposition. Any sale of the Personal Property may be made in conjunction with any sale of the Real Property.

**Election of Remedies.** All of Lender's rights and remedies will be cumulative and may be exercised alone or together. An election by Lender to choose any one remedy will not bar Lender from using any other remedy. If Lender decides to spend money or to perform any of Grantor's obligations under this Mortgage, after Grantor's failure to do so, that decision by Lender will not affect Lender's right to declare Grantor in default and to exercise Lender's remedies.

**Attorneys' Fees; Expenses.** If Lender institutes any suit or action to enforce any of the terms of this Mortgage, Lender shall be entitled to recover such sum as the court may adjudge reasonable as attorneys' fees at trial and upon any appeal. Whether or not any court action is involved, and to the extent not prohibited by law, all reasonable expenses Lender incurs that in Lender's opinion are necessary at any time for the protection of its interest or the enforcement of its rights shall become a part of the Indebtedness payable on demand and shall bear interest at the Note rate from the date of the expenditure until repaid. Expenses covered by this paragraph include, without limitation, however subject to any limits under applicable law, Lender's reasonable attorneys' fees and Lender's legal expenses, whether or not there is a lawsuit, including reasonable attorneys' fees and expenses for bankruptcy proceedings (including efforts to modify or vacate any automatic stay or injunction), appeals, and any anticipated post-judgment collection services, the cost of searching records, obtaining title reports (including foreclosure reports), surveyors' reports, and appraisal fees and title insurance, to the extent permitted by applicable law. Grantor also will pay any court costs, in addition to all other sums provided by law.

**NOTICES.** Any notice required to be given under this Mortgage, including without limitation any notice of default and any notice of sale shall be given in writing, and shall be effective when actually delivered, when actually received by telefacsimile (unless otherwise required by law), when deposited with a nationally recognized overnight courier, or, if mailed, when deposited in the United States mail, as first class, certified or registered mail postage prepaid, directed to the addresses shown near the beginning of this Mortgage. All copies of notices of foreclosure from the holder of any lien which has priority over this Mortgage shall be sent to Lender's address, as shown near the beginning of this Mortgage. Any person may change his or her address for notices under this Mortgage by giving formal written notice to the other person or persons, specifying that the purpose of the notice is to change the person's address. For notice purposes, Grantor agrees to keep Lender informed at all times of Grantor's current address. Unless otherwise provided or required by law, if there is more than one Grantor, any notice given by Lender to any Grantor is deemed to be notice given to all Grantors. It will be Grantor's responsibility to tell the others of the notice from Lender.

**MISCELLANEOUS PROVISIONS.** The following miscellaneous provisions are a part of this Mortgage:

**Amendments.** What is written in this Mortgage and in the Related Documents is Grantor's entire agreement with Lender concerning the matters covered by this Mortgage. To be effective, any change or amendment to this Mortgage must be in writing and must be signed by whoever will be bound or obligated by the change or amendment.

**Caption Headings.** Caption headings in this Mortgage are for convenience purposes only and are not to be used to interpret or define the provisions of this Mortgage.

**Grantor's Copy of Documents.** Lender agrees to provide Grantor with a conformed copy of both the Note and this Mortgage at the time they are executed or within a reasonable time after recording this Mortgage.

**Governing Law. This Mortgage will be governed by federal law applicable to Lender and, to the extent not preempted by federal law, the laws of the State of Minnesota without regard to its conflicts of law provisions. This Mortgage has been accepted by Lender in the State of Minnesota.**

**Joint and Several Liability.** All obligations of Grantor under this Mortgage shall be joint and several, and all references to Grantor shall mean each and every Grantor. This means that each Grantor signing below is responsible for all obligations in this Mortgage.

**No Waiver by Lender.** Grantor understands Lender will not give up any of Lender's rights under this Mortgage unless Lender does so in writing. The fact that Lender delays or omits to exercise any right will not mean that Lender has given up that right. If Lender does agree in writing to give up one of Lender's rights, that does not mean Grantor will not have to comply with the other provisions of this Mortgage. Grantor also understands that if Lender does consent to a request, that does not mean that Grantor will not have to get Lender's consent again if the situation happens again. Grantor further understands that just because Lender consents to one or more of Grantor's requests, that does not mean Lender will be required to consent to any of Grantor's future requests. Grantor waives presentment, demand for payment, protest, and notice of dishonor.

**Severability.** If a court finds that any provision of this Mortgage is not valid or should not be enforced, that fact by itself will not mean that the rest of this Mortgage will not be valid or enforced. Therefore, a court will enforce the rest of the provisions of this Mortgage even if a provision of this Mortgage may be found to be invalid or unenforceable.

**Merger.** There shall be no merger of the interest or estate created by this Mortgage with any other interest or estate in the Property at any time held by or for the benefit of Lender in any capacity, without the written consent of Lender.

**Successors and Assigns.** Subject to any limitations stated in this Mortgage on transfer of Grantor's interest, this Mortgage shall be binding upon and inure to the benefit of the parties, their successors and assigns. If ownership of the Property becomes vested in a person other than Grantor, Lender, without notice to Grantor, may deal with Grantor's successors with reference to this Mortgage and the Indebtedness by way of forbearance or extension without releasing Grantor from the obligations of this Mortgage or liability under the Indebtedness.

**Time is of the Essence.** Time is of the essence in the performance of this Mortgage.

**DEFINITIONS.** The following words shall have the following meanings when used in this Mortgage:

**Borrower.** The word "Borrower" means DAVID A GEER and JENNIFER L GEER and includes all co-signers and co-makers signing the Note and all their successors and assigns.

**Environmental Laws.** The words "Environmental Laws" mean any and all state, federal and local statutes, regulations and ordinances relating to the protection of human health or the environment, including without limitation the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. Section 9601, et seq. ("CERCLA"), the Superfund Amendments and Reauthorization Act of 1986, Pub. L. No. 99-499 ("SARA"), the Hazardous Materials Transportation Act, 49 U.S.C. Section 1801, et seq., the Resource Conservation and Recovery Act, 42 U.S.C. Section 6901, et seq., or other applicable state or

# MORTGAGE
## (Continued)


federal laws, rules, or regulations adopted pursuant thereto, or common law, and shall also include pollutants, contaminants, polychlorinated biphenyls, asbestos, urea formaldehyde, petroleum and petroleum products, and agricultural chemicals.

**Event of Default.** The words "Event of Default" mean any of the events of default set forth in this Mortgage in the events of default section of this Mortgage.

**Existing Indebtedness.** The words "Existing Indebtedness" mean the indebtedness described in the Existing Liens provision of this Mortgage.

**Grantor.** The word "Grantor" means DAVID A GEER and JENNIFER L GEER.

**Guaranty.** The word "Guaranty" means the guaranty from guarantor, endorser, surety, or accommodation party to Lender, including without limitation a guaranty of all or part of the Note.

**Hazardous Substances.** The words "Hazardous Substances" mean materials that, because of their quantity, concentration or physical, chemical or infectious characteristics, may cause or pose a present or potential hazard to human health or the environment when improperly used, treated, stored, disposed of, generated, manufactured, transported or otherwise handled. The words "Hazardous Substances" are used in their very broadest sense and include without limitation any and all hazardous or toxic substances, materials or waste as defined by or listed under the Environmental Laws. The term "Hazardous Substances" also includes, without limitation, petroleum and petroleum by-products or any fraction thereof and asbestos.

**Improvements.** The word "Improvements" means all existing and future improvements, buildings, structures, mobile homes affixed on the Real Property, facilities, additions, replacements and other construction on the Real Property.

**Indebtedness.** The word "Indebtedness" means all principal, interest, and other amounts, costs and expenses payable under the Note or Related Documents, together with all renewals of, extensions of, modifications of, consolidations of and substitutions for the Note or Related Documents and any amounts expended or advanced by Lender to discharge Grantor's obligations or expenses incurred by Lender to enforce Grantor's obligations under this Mortgage, together with interest on such amounts as provided in this Mortgage.

**Lender.** The word "Lender" means HERITAGE BANK NATIONAL ASSOCIATION, its successors and assigns. The words "successors or assigns" mean any person or company that acquires any interest in the Note.

**Mortgage.** The word "Mortgage" means this Mortgage between Grantor and Lender.

**Note.** The word "Note" means the promissory note dated October 22, 2018, **in the original principal amount of $14,848.48** from Grantor to Lender, together with all renewals of, extensions of, modifications of, refinancings of, consolidations of, and substitutions for the promissory note or agreement. The maturity date of the Note is October 26, 2038.

**Personal Property.** The words "Personal Property" mean all equipment, fixtures, and other articles of personal property now or hereafter owned by Grantor, and now or hereafter attached or affixed to the Real Property; together with all accessions, parts, and additions to, all replacements of, and all substitutions for, any of such property; and together with all proceeds (including without limitation all insurance proceeds and refunds of premiums) from any sale or other disposition of the Property.

**Property.** The word "Property" means collectively the Real Property and the Personal Property.

**Real Property.** The words "Real Property" mean the real property, interests and rights, as further described in this Mortgage.

**Related Documents.** The words "Related Documents" mean all promissory notes, credit agreements, loan agreements, environmental agreements, guaranties, security agreements, mortgages, deeds of trust, security deeds, collateral mortgages, and all other instruments, agreements and documents, whether now or hereafter existing, executed in connection with the Indebtedness.

**Rents.** The word "Rents" means all present and future rents, revenues, income, issues, royalties, profits, and other benefits derived from the Property.

EACH GRANTOR ACKNOWLEDGES HAVING READ ALL THE PROVISIONS OF THIS MORTGAGE, AND EACH GRANTOR AGREES TO ITS TERMS.

GRANTOR:

X _____
DAVID A GEER

X _____
JENNIFER L GEER

This Mortgage was drafted by:

ELAINE BAKER, REAL ESTATE LOAN PROCESSOR
HERITAGE BANK NATIONAL ASSOCIATION
110 SOUTH ST W
SPICER, MN 56288-0658

## INDIVIDUAL ACKNOWLEDGMENT

STATE OF _Minnesota_ )
                                              ) SS
COUNTY OF _Kandiyohi_ )

On this day before me, the undersigned Notary Public, personally appeared DAVID A GEER and JENNIFER L GEER, HUSBAND AND WIFE, to me known to be the individuals described in and who executed the Mortgage, and acknowledged that they signed the Mortgage as their free and voluntary act and deed, for the uses and purposes therein mentioned.

Given under my hand and official seal this _22_ day of _October_ , 20 _18_ .

By _Shari Courtney_                                      Residing at _____

Notary Public in and for the State of _____            My commission expires _____

SHARI J COURTNEY
Notary Public
State of Minnesota
My Commission Expires
January 31, 2020

## Originator Names and Nationwide Mortgage Licensing System and Registry IDs:

Organization: HERITAGE BANK NATIONAL ASSOCIATION          NMLSR ID: 446440

Individual: Amy Tillemans          NMLSR ID: 1214487

LaserPro, Ver. 18.3.10.008 Copr. Finastra USA Corporation 1997, 2018.   All Rights Reserved.   - MN   C:\LASERPRO\CFI\LPL\G03.FC TR-1320 PR-39

DEC 2 1 2018

Doc# 269612   Fee: $46.00   2 Pages
Property & Public Services
Property Records Division
Yellow Medicine County, Minnesota
I hereby certify that the within instrument
was filed on November 1, 2018 at 10:20 AM

Janel Timm, Yellow Medicine County Recorder

By _Kelly Kruger_ Deputy

Registration Tax Paid $ *Exempt*

Date *November 1, 2018* No. _____
Janel Timm, Property & Public Services Director

*Kelly Kruger*

(Top 3 inches reserved for recording data)

---

## ASSIGNMENT OF MORTGAGE
### by Business Entity

**Minnesota Uniform Conveyancing Blanks**
**Form 20.3.2 (2011)**

DATE: October 22, 2018
_____
*(month/day/year)*

FOR VALUABLE CONSIDERATION, Heritage Bank N.A. _____
*(insert name of Assignor)*

a Corporation _____ under the laws of The United States of America ,

("**Assignor**"), hereby sells, assigns, and transfers to MN Housing Finance Agency _____
*(insert name of each Assignee)*

("**Assignee**"),the Assignor's interest in the Mortgage dated October 22, 2018 _____, executed by David A Geer and Jennifer L
*(month/day/year)*

Geer, Husband and Wife _____, as mortgagor,

to Heritage Bank N.A. _____

as mortgagee, and recorded on ___November 1, 2018___, as Document Number ___269611___ (or in Book _____
*(month/day/year)*

of _____ Page _____), in the Office of the ☐ County Recorder ☐ Registrar of Titles of _____
*(check the applicable boxes)*

County, Minnesota, together with all right and interest in the note and obligations therein specified and the debt thereby secured.

Check here if all or part of the described real property is Registered (Torrens) ☐

Assignor

Heritage Bank N.A.
*(name of Assignor)*

By: ___*Jeffrey Aschi*___
*(signature)*

Its: Vice President
*(type of authority)*

By: ___*Christine K. Osac*___
*(signature)*

Its: Vice President
*(type of authority)*

State of Minnesota, County of Kandiyohi _____

This instrument was acknowledged before me on October 22, 2018 _____, by Jeffrey D. Asche _____
*(month/day/year)* *(name of authorized signer)*

_____ as Vice President _____
*(type of authority)*

and by Christine K. Vraa _____
*(name of authorized signer)*

as Vice President _____ of Heritage Bank N.A. _____.
*(type of authority)* *(name of Assignor)*

(Stamp)

ELAINE I BAKER
NOTARY PUBLIC - MINNESOTA
My Comm. Exp. Jan. 31, 2020

*Elaine S. Baker*
*(signature of notarial officer)*

Title (and Rank): RE Loan Processor

My commission expires: 1/31/2020
*(month/day/year)*

THIS INSTRUMENT WAS DRAFTED BY:
*(insert name and address)*

Heritage Bank N.A.
PO Box 1124
Willmar, MN   56201

# AMERINAT®

## Account History Ledger Report

| Account | Reference 12650564 | Project:1524 | Client 1070 |
|---|---|---|---|

AGENCY MINNESOTA HOUSING FINANCE AGENCY
400 WABASHA ST N SUITE400
SAINT PAUL, MN 55102-1147

BORROWER DAVID A GEER
144 5TH AVE
GRANITE FALLS, MN 56241-

PROPERTY 144 5TH AVE
GRANITE FALLS, MN 56241-

| | | | | | | | | |
|---|---|---|---|---|---|---|---|---|
| DATE OPENED | 12/21/2018 | ACCOUNT STATUS | OPEN | P&I | 97.94 | ORIGINAL BAL. | 14,848.48 | RESERVE BAL. | 0.00 |
| NOTE DATE | 10/22/2018 | COLL. STATUS | BKR07 | ESCROW | 0.00 | PRINCIPAL BAL. | 13,954.04 | OPERATING RESERVE | 0.00 |
| MATURITY DATE | 10/26/2038 | ACCOUNT TYPE | PRIN & INT | CLIENT FUND | 0.00 | UNAPPLIED BAL. | 0.00 | OTHER RESERVE | 0.00 |
| INT. PAID TO DATE | 10/30/2020 | PAYMENT FREQ | MONTHLY | RESERVE | 0.00 | SINKING BAL. | 0.00 | ESCROW BAL. | 0.00 |
| PAYMENT DUE DATE | 11/26/2020 | INTEREST RATE | 4.990 | OTHER FUND * | 0.00 | OTHER FEE BAL | 0.00 | OTHER FUNDS BAL. | 0.00 |
| YTD PRINCIPAL | 390.80 | YTD TAX PAID | 0.00 | BORR. & MISC. FEE | 0.00 | LATE CHARGE BAL | 0.00 | TRUST BAL. | 0.00 |
| YTD INTEREST | 590.66 | YTD INS. PAID | 0.00 | TOTAL PAYMENT | 97.94 | ACCRUED INTERES | 0.00 | | |
| | | | | LATE FEE | 0.00 | | | | |

| Date | Payment / Check | Amount | Escrow | Misc. Fee | Borr. Fee | Other Fee | * Other Fund | Reserve | Operating Reserve | Other Reserve | NSF Fee | Late Fee | Principal | Interest | Unapplied | Client Fund | Escrow Balance | Principal Balance | Reserve Balance | Unapplied Balance | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 11/02/20 | | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,954.04 | 0.00 | 0.00 | Client Cutoff |
| 10/30/20 | 5216684 | 100.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 44.50 | 55.50 | 0.00 | 0.00 | 0.00 | 13,954.04 | 0.00 | 0.00 | AMT FOR 10/20 |
| 10/02/20 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 13,998.54 | 0.00 | 0.00 | Client Cutoff |
| 10/01/20 | 5183353 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 32.72 | 65.22 | 0.00 | 0.00 | 0.00 | 13,998.54 | 0.00 | 0.00 | AMT FOR 09/20 |
| 08/31/19 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,031.26 | 0.00 | 0.00 | Client Cutoff |
| 08/28/20 | 5148713 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 40.23 | 57.71 | 0.00 | 0.00 | 0.00 | 14,031.26 | 0.00 | 0.00 | AMT FOR 08/20 |
| 07/31/20 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,071.49 | 0.00 | 0.00 | Client Cutoff |
| 07/29/20 | 5119422 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 53.53 | 44.41 | 0.00 | 0.00 | 0.00 | 14,071.49 | 0.00 | 0.00 | AMT FOR 07/20 |
| 07/07/20 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,125.02 | 0.00 | 0.00 | Client Cutoff |
| 07/06/20 | 5097276 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 18.66 | 79.28 | 0.00 | 0.00 | 0.00 | 14,125.02 | 0.00 | 0.00 | AMT FOR 06/20 |
| 05/27/20 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,143.68 | 0.00 | 0.00 | Client Cutoff |
| 05/26/20 | 5043704 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 41.70 | 56.24 | 0.00 | 0.00 | 0.00 | 14,143.68 | 0.00 | 0.00 | AMT FOR 05/20 |
| 04/28/20 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,185.38 | 0.00 | 0.00 | Client Cutoff |
| 04/27/20 | 5004988 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 31.86 | 66.08 | 0.00 | 0.00 | 0.00 | 14,185.38 | 0.00 | 0.00 | AMT FOR 04/20 |
| 03/25/20 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,217.24 | 0.00 | 0.00 | Client Cutoff |
| 03/24/20 | 4970419 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 45.29 | 52.65 | 0.00 | 0.00 | 0.00 | 14,217.24 | 0.00 | 0.00 | AMT FOR 03/20 |
| 02/27/20 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,262.53 | 0.00 | 0.00 | Client Cutoff |
| 02/26/20 | 4916347 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 39.28 | 58.66 | 0.00 | 0.00 | 0.00 | 14,262.53 | 0.00 | 0.00 | AMT FOR 02/20 |
| 01/28/20 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,301.81 | 0.00 | 0.00 | Client Cutoff |
| 01/27/20 | 4864674 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 43.03 | 54.91 | 0.00 | 0.00 | 0.00 | 14,301.81 | 0.00 | 0.00 | AMT FOR 01/20 |
| 12/31/19 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,344.84 | 0.00 | 0.00 | Client Cutoff |
| 12/30/19 | 4800522 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 61.43 | 36.51 | 0.00 | 0.00 | 0.00 | 14,344.84 | 0.00 | 0.00 | AMT FOR 12/19 |
| 12/18/19 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,406.27 | 0.00 | 0.00 | Client Cutoff |
| 12/16/19 | 4789824 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 0.00 | 97.94 | 0.00 | 0.00 | 0.00 | 14,406.27 | 0.00 | 0.00 | AMT FOR 11/19 |
| 11/05/19 | | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,406.27 | 0.00 | 0.00 | Client Cutoff |
| 11/01/19 | 4719866 O | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 50.48 | 47.46 | 0.00 | 0.00 | 0.00 | 14,406.27 | 0.00 | 0.00 | AMT FOR 10/19 |

*Other fund includes Sinking Fund Amount; PO: Post-Petition Payment; PE - Pre-Petetion Payment*



# Account History Ledger Report

| Date | Payment/Check | Amount | Escrow | Misc. Fee | Borr. Fee | Other Fee | * Other Fund | Reserve | Operating Reserve | Other Reserve | NSF Fee | Late Fee | Principal | Interest | Unapplied | Client Fund | Escrow Balance | Principal Balance | Reserve Balance | Unapplied Balance | Description |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 10/11/19 | D 1354885 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,456.75 | 0.00 | 0.00 | Client Cutoff |
| 10/09/19 | O 4683327 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 36.50 | 61.44 | 0.00 | 0.00 | 0.00 | 14,456.75 | 0.00 | 0.00 | AMT FOR 09/19 |
| 09/11/19 | D 1352046 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,493.25 | 0.00 | 0.00 | Client Cutoff |
| 09/09/19 | O 4642663 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 18.57 | 79.37 | 0.00 | 0.00 | 0.00 | 14,493.25 | 0.00 | 0.00 | AMT FOR 08/19 |
| 08/02/19 | D 1348776 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,511.82 | 0.00 | 0.00 | Client Cutoff |
| 08/01/19 | O 4590078 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 34.29 | 63.65 | 0.00 | 0.00 | 0.00 | 14,511.82 | 0.00 | 0.00 | AMT FOR 07/19 |
| 07/03/19 | D 1346160 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,546.11 | 0.00 | 0.00 | Client Cutoff |
| 07/01/19 | O 4522393 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 44.08 | 53.86 | 0.00 | 0.00 | 0.00 | 14,546.11 | 0.00 | 0.00 | AMT FOR 06/19 |
| 06/07/19 | D 1343468 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,590.19 | 0.00 | 0.00 | Client Cutoff |
| 06/05/19 | O 4494907 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 7.13 | 90.81 | 0.00 | 0.00 | 0.00 | 14,590.19 | 0.00 | 0.00 | AMT FOR 05/19 |
| 04/24/19 | D 1339180 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,597.32 | 0.00 | 0.00 | Client Cutoff |
| 04/22/19 | O 4425449 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 38.91 | 59.03 | 0.00 | 0.00 | 0.00 | 14,597.32 | 0.00 | 0.00 | AMT FOR 04/19 |
| 03/27/19 | D 1336497 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,636.23 | 0.00 | 0.00 | Client Cutoff |
| 03/25/19 | O 4375922 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 44.76 | 53.18 | 0.00 | 0.00 | 0.00 | 14,636.23 | 0.00 | 0.00 | AMT FOR 03/19 |
| 03/04/19 | D 1333893 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,680.99 | 0.00 | 0.00 | Client Cutoff |
| 02/28/19 | O 4326899 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 61.69 | 36.25 | 0.00 | 0.00 | 0.00 | 14,680.99 | 0.00 | 0.00 | AMT FOR 02/19 |
| 02/14/19 | D 1332347 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,742.68 | 0.00 | 0.00 | Client Cutoff |
| 02/12/19 | O 4309150 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 57.52 | 40.42 | 0.00 | 0.00 | 0.00 | 14,742.68 | 0.00 | 0.00 | AMT FOR 01/19 |
| 01/29/19 | D 1330525 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,800.20 | 0.00 | 0.00 | Client Cutoff |
| 01/25/19 | O 4268236 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 48.28 | 49.66 | 0.00 | 0.00 | 0.00 | 14,800.20 | 0.00 | 0.00 | AMT FOR 12/18 |
| 01/07/19 | D 1326634 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,848.48 | 0.00 | 0.00 | Client Cutoff |
| 01/03/19 | P 4225913 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 0.00 | 97.94 | 0.00 | 0.00 | 0.00 | 14,848.48 | 0.00 | 0.00 | AMT FOR 11/18 |
| 01/03/19 | 309624 | -97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | -97.94 | 0.00 | 0.00 | 14,848.48 | 0.00 | 0.00 | PYMT_AE |
| 01/02/19 | O 4224871 | 97.94 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00A | 0.00 | 0.00 | 97.94 | 0.00 | 0.00 | 14,848.48 | 0.00 | 97.94 | AMT FOR 10/18 |
| 12/21/18 | 4218124 | 14,848.48 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 0.00 | 14,848.48 | 0.00 | 0.00 | 0.00 | 0.00 | 14,848.48 | 0.00 | 0.00 | BEGINNING BALANCE |

|  | RECEIPTS | ADJUSTMENTS | DISBURSEMENTS | BALANCE |
|---|---|---|---|---|
| PRINCIPAL | 14,848.48 | 0.00 | 894.44 | 13,954.04 |
| ESCROW | 0.00 | 0.00 | 0.00 | 0.00 |
| RESERVE | 0.00 | 0.00 | 0.00 | 0.00 |



November 11, 2020

200 Warren E. Burger Federal Building
and U.S. Courthouse
316 N. Robert St.
St. Paul, MN 55101

Re/Case # 20-32319 / David Allen Geer /XXX-XX-9716

Please see the enclosed executed Reaffirmation Agreement for filing. If you have any questions, please feel free to contact us directly.

Sincerely,

Desiree Guerrero
Bankruptcy and Credit Reporting Specialist
AmeriNat
Tel: 1-800-943-1988 ext. 1213
**Direct: 562-745-1213**
**Fax: 562-927-3578**
bk@amerinatls.com

RECEIVED
20 NOV 16 PH 1:43
U.S. BANKRUPTCY COURT
ST. PAUL, MN

CC:
Debtor Attorney:
Douglas Kluver
Kluver Law Office & Mediation Center PLL
408 North First Street
Montevideo, MN 56265